UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

**********************************
SIDNEY BOURNE                    *
CLAUDIO M. DELISE, and           *          CASE NO. **1:06-cv-11781-WGY**
RALPH S. TYLER                   *
                                 *
            Appellants,          *          Appeal from Order & Decisions in
                                 *          U.S. Bankruptcy Court
                                 *          Case No. 05-18880-(RS)
NORTHWOOD PROPERTIES, LLC        *
                                 *
            Appellee.            *
                                 *
**********************************

# APPELLANTS'

# FINAL REPLY BRIEF

(Replacing the Preliminary Reply Brief
Filed November 16, 2006)


Sidney Bourne, pro-se
20 Northwood Drive, Unit 403
Sudbury, Massachusetts 01776
(978) 369-4851

Claudio M. Delise, pro-se
20 Northwood Drive, Unit 301
Sudbury, Massachusetts 01776
(978) 369-7039

Ralph S. Tyler, pro-se
One Deacon Lane
Sudbury, Massachusetts 01776
(978) 443-2646


November 21, 2006

TABLE OF CONTENTS

INTRODUCTION                                                                                      1

   Phasing Rights                                                                            1

   Confirmation                                                                               1

RESPONSE TO APPELLEE'S STATEMENT OF  [Alleged] FACTS                         2

ARGUMENT SUMMARY                                                                          2

   Phasing Rights

   ARGUMENT                                                                                   5

   100% consent has been required since 1963 by §5(b) and was not repealed in 1998.      5

   The Conditional Power to Establish Percentage Interests With 75% Consent Is
Consistent With The 100% Requirement of §5(b)(1)                                       6

   The Powers to Extend, Revive and Grant Phasing Rights is Conditional
on the 100% consent requirement of §5(b)(1)                                            7

   The 1998 Legislature Rejected lowering Consent from 100% to 75%                       8

   By the doctrine of "inclusio unius est exclusio alterius"  the 100% consent
of §5(b)(1) is not excluded by §5(b)(2)(iii)                                           9

   The 1998 Legislature was precise in using "subsection" and "subparagraph" in
the revised §5(b),  and that precision must be given meaning                           9

   "Constructive Consent" makes the 100% Consent of §5(b)(1) apply to Phasing Rights
Extensions                                                                            10

   Northwood Trustees Certification of the Recorded Phasing Rights Extension was
Premature                                                                             11

   Appellants' Cases conveyed applicable settled Law because 100% consent has
been required since 1963.                                                             12

   Northwood's Master Deed Contemplates Completion with 24 units                         13

   The Bourne and Delise deeded 3.92% interests became Fixed on December 9, 2005         13

   Phased Condominiums Often use a table of percentage interests or an explicit
formula to provide "Constructive Consent"                                             14

   Discussion of Northwood's Strained Interpretation Of  "Constructive Consent"          15

<u>Northwood's Procedural Arguments</u>                                              15

    All Parties have Been Served,  No party has been Prejudiced       15

    Appellants Adequately Developed the Statute of Frauds Argument in   16
    the Bankruptcy Court

    Appellants May Introduce New Citations On Appeal To Support Previously
    Raised Issues                                                    17

CONCLUSION                                                             18

    Northwood Phasing Right Extension Requires Consent by Bourne & Delise   18

    Northwood's Confirmation should be reversed                       19

EXHIBITS

1.  Detailed Response to Appellees' Allegation of Facts

2.  June 3, 1997 Report of the House Committee on Housing and Urban Development

3.  Legislative History and Exhibits (Source Dockets 100 & 102)

4.  Statute of Frauds Argument Presented to the Bankruptcy Court

TABLE OF AUTHORITIES

B & T Masonry Constr. Co. v. Pub. Serv. Mutual Insur., 382 F.3d 36, (1ˢᵗ Cir. 2004)      16, 17

*Celulares Telefonica De P.R., Inc. v Advance Cellular Sys.* 262 BR 10 (2001,
DC Puerto Rico)                                                                                16

<u>Ford v. United States</u>, 273 U.S. 593, 47 S.Ct 531, 71 L.Ed. 793 (1927)                  9

<u>Hutner v. Cape Codder Condominium Bd. of Trustees</u> 52 Mass.App.Ct. 429,
754 N.E.2d 138 (2001)                                                                          14

*In re Push & Pull Enterprises, Inc.* (Bkrtcy .N.D.Ind.,1988.) 84 B.R. 546 551                 9

<u>Kaplan v. Boudreaux</u> 410 Mass. 435, 573 N.E.2d 495 (1991)                            5, 12,

<u>Lebowitz v. Heritage Heights, Inc.</u> 8 L.C.R. 295 (2000)                              17, 18

<u>Livoli v Board of Appeals of Southborough</u> 42 Mass. App. Ct. 921 923(1997)              9

*McCoy v. Massachusetts Inst. of Technology, 950 F.2d 13, 22 n.7 (1st Cir. 1991)*             18

<u>Strauss v. Oyster River Condominium Trust</u>, *417 Mass. 442, 445-447,*
*631 N.E.2d 979 (1994)*                                                                        12

<u>Suprenant v. First Trade Union Sav. Bank, FSB</u> 40 Mass.App.Ct. 637 (1996)            12, 13

<u>Teamsters Union v. Superline Transp. Co.</u>, 953 F.2d 17, 21 (1st Cir. 1992)           17, 18

<u>Viola v. Millbank II Associates</u> 44 Mass.App.Ct. 82 (1997)                       3, 8, 12, 13

<u>Statutes</u>

M.G.L. c. 259 §1                                                                              17

Westlaw M.G.L.A. 183A §5                                                                       5,

§5(b)                                                                      3, 5, 6, 7, 8, 9, 10, 12

§5(b)(1)                                                     1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 , 14

§5(b)(2)                                                                                    3, 10

§5(b)(2)(iii)                                                             1,  3, 4, 5, 6, 7, 8, 9, 10, 11

House Bill 3825 (1997-8)                                                                       8

House Bill 3455 (1997-8)                                                                       8

Chapter 242 of the Acts of 1998                                                               8

<u>Other References</u>

M.C.L.E. <u>Condominium Law</u>                                                             14

Oxford English Dictionary                                                                      4

<u>INTRODUCTION</u>

<u>Phasing Rights</u>

The issue before the Court is how to reconcile the 100% consent requirements of §5(b)(1) with the seemingly contradictory provisions of §5(b)(2)(iii) where an association, with 75% consent, can extend, revive and grant phasing rights and set percentage interests.  In our Reply, we will show that our interpretation of these provisions is in full harmony, whereas in Northwood's interpretation the newly enacted "constructive consent" provision would be a nullity.  In so doing we will have demonstrated that the Bankruptcy Court got part of it right, §5(b)(1) applies contrary to Northwood's assertions.

We will demonstrate why our interpretation of the "constructive consent" provision is reasonable, while Northwood's is not, based on legislative history, prior case law and the plain meaning of the statutory words.

We have already shown that the Northwood master deed did not provide sufficient disclosure to constitute "constructive consent" because it depends on assumptions and/or future events before percentage interests can be determined.

What this means is that before any additional phases are added to the Northwood master deed Bourne and Delise must provide their consent because they did not give their "constructive consent" when purchasing their condominiums.

<u>Confirmation</u>

Appellants stand on their previously filed Brief.   There, Appellants demonstrated that Northwood's last minute claims classifications were clearly done to manage claim votes and not for legitimate business purposes.  The timing and nature of their changes leave no doubt that their motivations were to secure votes. The law of the First Circuit does not allow such

gerrymandering.  The votes of three transferred claims should have been counted as members of the same class as the Condominium Trust.  Had their votes been counted, the Plan could not have been confirmed.

In addition, Northwood claims that somehow Tashmoo could be required to pay Tyler's claim.  Tyler asked the Bankruptcy Court for such an order and was denied.  Until Northwood presents evidence of Tashmoo's obligation and ability to pay Tyler's claim, it cannot demonstrate that Tyler was unimpaired.  The Bankruptcy Court made a clearly erroneous finding of fact,  Tyler remains impaired and was entitled to have his vote counted with the vote of the Condominium Trust.  Had Tyler's vote been counted with the vote of the Condominium Trust, the Northwood Plan would not have received sufficient votes to be confirmed.

The Bankruptcy Court should not have confirmed the Northwood Plan.  The decision must be reversed.

Appellants' Response to Appellee's Statement of  [Alleged] Facts

 The Appellants admit ¶ 4, 7, 8, 11, 12, 14, 15, 19 to 21, 23 to 28, and 30 of Appellee factual allegations and deny the rest as they are incomplete, inaccurate, and/or misleading.  Appellants detailed response to each of Northwood's allegation of fact is attached as Exhibit 1.

ARGUMENT SUMMARY

The 1998 legislature inserted the  "constructive consent" provision in §5(b)(1) to make it easier for <u>some</u> condominiums, those with appropriately drafted master deeds, to meet the 100% consent requirement.

The "constructive consent" clause[1] of §5(b)(1) says that it only applies to the subsequent addition of units or land to a condominium.  This intent can only be given meaning if 100% consent is required for the extension, revival, or grant of phasing rights.  The "constructive consent" provision codified the decision in _Viola v. Millbank II Associates_ 44 Mass.App.Ct. 82 (1997) that a complete disclosure of future percentage interests satisfied the intent of the 100% consent requirement because the unit owner, in accepting the deed, knew the exact percentage interests that would occur when each subsequent phase was added to the master deed.  This would be the same precise information he would have received when asked to approve each of the subsequent phases as amendments to the master deed.  Constructive consent does not mean incomplete disclosure as Northwood contends.

The power to extend, revive, or grant phasing rights, with 75% consent, is a conditional power.  It only applies to some but not all condominiums.  The powers of paragraph §5(b)(2) are explicitly conditional and expressed just before their enumeration as  "except as provided in this subsection", i.e. subsection §5(b), a fact that Northwood has tried to obscure.  The conditionality of this power is also expressed by the certification requirement that the condominium association complied with the requirements of subsection §5(b) (i.e. "this subsection"), which includes the consent requirements of paragraph §5(b)(1).

The power to establish unit percentage interests pursuant to §5(b)(2)(iii) is also in harmony with §5(b)(1).  It permits the reconfiguration or redesign of the units in planned future buildings (phases).  As long as the overall percentage interest of the planned buildings does not change, a reconfiguration of its units will not change the schedule of percentage interests for

---

[1] "provided, however, that the acceptance and recording of the unit deed shall constitute consent by the grantee to the addition of subsequent units or land or both to the condominium and consent to the reduction of the undivided interest of the unit owner if"  §5(b)(1)

existing units[2] and therefore does not require 100% consent pursuant to §5(b)(1).   Northwood

contends that "constructive consent" doesn't apply for extensions of phasing rights.  But the

result of an extension is to add units and reduce percentage interests of existing owners; precisely

what the legislature said "constructive consent" could enable.  In this disharmony, Northwood's

interpretation must be wrong.   On the other hand Appellants' interpretation of the percentage

interest setting powers of §5(b)(2)(iii) are adequately explained as enabling the reconfiguration

of planned buildings.  In Appellants' interpretation,  §5(b)(2)(iii) is therefore in complete

harmony with §5(b)(1).  Appellants have it right. Northwood has it wrong.

　　　　Northwood did not respond to our challenge to demonstrate in their brief how much

Bourne or Delise's percentage interest in the condominium's common areas and facilities would

change from its current 3.92%, with the addition of each of the next three phases to the

Northwood Master Deed[3].  Northwood also failed to offer any authority for their interpretation

of "constructive consent".  Whereas, Appellants clearly showed, by reference to the Oxford

English Dictionary, that their interpretation of the statute flows directly from the plain meaning

of the words "made", "accurate" and "determination'.

　　　　Northwood also argued that <u>only</u> the 75% consent requirement of §5(b)(2)(iii) governs

the addition of units to the Northwood master deed that result from the phasing rights extension.

The Bankruptcy Court rejected Northwood's interpretation of subparagraph (iii).  It decided that

the 100% consent of  §5(b)(1) applied.  What the Northwood analysis continues to ignore is that

<u>§5(b)(2)(iii) is an explicitly conditional grant of authority</u> to the condominium association.  Any

---

[2] For example a thirty thousand square foot building of fifteen 2,000 sf units could be reconfigured as ten 3,000 sf
units or twenty 1,500 sf units or in a combination of sizes without changing the total percentage interest of all units
in the building if percentages were based on unit square feet.   To accommodate a variety of unit sizes the
association could also change the method by which percentage interests were established in the planned redesigned
building to better reflect the relation to market values.
[3] At the November 18, 2006 hearing Northwood's counsel admitted that the master deed did not make this type of
determination possible.

grant made under §5(b)(2)(iii) is subject to all the requirements of "this subsection" i.e. subsection[4] §5(b) which includes the 100% consent requirement of §5(b)(1).  By the well established doctrine of "inclusio unius est exclusio alterius", if the legislature had wanted to exclude §5(b)(1) it would have done so in §5(b)(2)(iii) just as it did when it excluded section §19.

Northwood further tries to confuse the court with its claims that well-established case law is irrelevant.  All Appellants' cases remain applicable settled law because since 1963 100% consent has been required before a unit's percentage interest could be changed.  Had the legislature wanted to negate settled case law to exclude the addition of units enabled by an extension, revival or grant of phasing rights by an association pursuant to §5(b)(2) (iii), it would have done so as it did when it changed the statute to no longer require 100% when dedicating a portion of the common area for the exclusive use by some units, which was previously required by _Kaplan v. Boudreaux_ 410 Mass. 435, 573 N.E.2d 495 (1991).


ARGUMENT


<u>100% consent has been required since 1963 by §5(b) and was not repealed in 1998.</u>

The statutory "Credits" of  Westlaw's M.G.L.A. 183A §5 shows the following entry:

Added by St.1963, c. 493, § 1. Amended by St.1987, c. 87; St.1994, c. 365, §§ 2, 3; St.1998, c. 242, § 5.  See Page 4 of Appellants Exhibit 24

The first revision in 1987 was to add the underlined words so that §5(b) was revised to read:

"The percentage of the undivided interest of each unit owner in the common areas and facilities as expressed in the master deed shall not be altered without the consent of all unit owners <u>whose percentage of the undivided interest is</u>

---

[4] The Court should note that §5(b)(2)(iii) refers to itself correctly as a subparagraph in the sentence:  "Any action taken pursuant to <u>this subparagraph</u> may be taken even if the time period for adding land, units or common facilities, or for withdrawal has expired."

<u>affected</u>, expressed in an amended master deed duly recorded. The percentage of the undivided interest in the common areas and facilities shall not be separated from the unit to which it appertains, and shall be deemed to be conveyed or encumbered with the unit even though such interest is not expressly mentioned or described in the conveyance or other instrument."

In other words, between 1963 and 1987 Massachusetts condominium law required the consent of all unit owners to change any percentage interest, but since 1987 it has been 100% of the affected unit owners.  With the 1998 revision, the last one, §5(b) still requires 100% consent as follows:

"(b)(1) The percentage of the undivided interest of each unit owner in the common areas and facilities as expressed in the master deed shall not be altered <u>without the consent of all unit owners</u> whose percentage of the undivided interest is materially affected" §5(b)(1)

<u>The Conditional Power to Establish Percentage Interests With 75% Consent Is Consistent With The 100% Requirement of §5(b)(1)</u>

The conditional power to establish unit percentage interests pursuant to §5(b)(2)(iii) is in harmony with §5(b)(1).  It permits the reconfiguration or redesign of the units in planned future buildings (phases), which also requires that new percentage interests be established because they are not specified in the master deed.  As long as the overall total percentage interest(s) of the planned building(s) does not change, a reconfiguration of its units will not change the schedule of percentage interests for existing units[5] and therefore does not require 100% consent pursuant to §5(b)(1).  The percentage interest setting powers of §5(b)(2)(iii) are adequately explained as enabling the reconfiguration of planned buildings with 75% consent.  For this reason it does not follow, as Northwood claims, that "if the… interpretation of §5(b)(1) advocated by Bourne and Delise were accurate, then this portion of §5(b)(2) [(iii)] would directly contradict it."  See Page

---

[5] For example a thirty thousand square foot building of fifteen 2,000 sf units could be reconfigured as ten 3,000 sf units or twenty 1,500 sf units or in a combination of sizes without changing the total percentage interest of all units in the building if percentages were based on unit square feet.  To accommodate a variety of unit sizes the association could also change the method by which percentage interests were established in the planned redesigned building to better reflect the relation to market values.

21 of Northwood's Brief.  The power to set these percentage interests is a conditional power as will be described in a subsequent section.  Appellants have shown instances of where this power can be exercised with only 75% consent.  It is not a nullity.  Subparagraph §5(b)(2)(iii), a conditional power, is therefore in complete harmony with §5(b)(1) in Appellants' interpretation.

<u>The Powers to Extend, Revive and Grant Phasing Rights and Set Percentage Interests is Conditional on the 100% consent requirement of §5(b)(1)</u>

Northwood's argument fails to incorporate that §5(b)(2)(iii) is a conditional grant of authority to the unit owners to extend, revive or grant phasing rights and set percentage interests. It is dependant on compliance of all provisions of Subsection 5(b) including the 100% unit owner consent provisions of §5(b)(1).   This conditional grant of authority is expressed in §5(b)(2) and in the last sentence of §5(b)(2)(iii) as follows

> "(2) The organization of unit owners, acting by and through its governing body, shall have the power and authority, as attorney in fact on behalf of all unit owners from time to time owning units in the condominium, <u>except as provided in this subsection</u>, to:"  §5(b)(2)

> "(iii) Extend, revive or grant rights to develop the condominium,….Such extension .....shall be effective 30 days after the recording . of an instrument duly executed by the organization of unit owners setting forth accurately the extension, revival, grant, addition or withdrawal, and <u>reciting compliance with the requirements of this subsection;</u>"  M.G.L. c. 183A §5(b)(2)(iii)

The words "this subsection" refer to subsection §5(b), which includes the 100% consent requirements of paragraph §5(b)(1).

As a practical matter, for many if not most phased condominiums, the master deed will have provided "constructive consent" for additional phases such that their extension or revival can be accomplished by the condominium association with consent of 75% of the unit owners. Where the master deed did not provide for "constructive consent", Northwood being an example, then 100% consent is required.   Thus the "constructive consent" clause is not a nullity.

Proper statutory interpretation cannot ignore, as Northwood's arguments have done, that the power to extend, revive or grant phasing rights and set percentage interests, as previously explained, is a conditional power.   Once this is understood, the apparent conflicts between §5(b)(1) and §5(b)(2)(iii) disappear.

<u>The 1998 Legislature Rejected Lowering Consent from 100% to 75%</u>

The 1998 legislature considered then rejected lowering the 100% consent requirement to 75% of the unit owners affected by a change in their percentage interest in the common areas and facilities.  At the time it was settled law that the reduction in percentage interests resulting from the addition of units to a master deed required 100% consent by all existing unit owners even in one case where those units were added during the initial term of the phasing rights.  See <u>Viola v. Millbank II Associates</u> 44 Mass.App.Ct. 82 (1997).   This Court should not, through its interpretation of §5(b) revive the 75% consent amendment explicitly rejected by the legislature.

The 1998 legislature considered House Bill 3825[6] that would have directly replaced the 100% consent requirement with a 75% consent requirement by the unit owners affected by a change in their percentage interest in the common areas and facilities.   It also considered House Bill 3455 that contained the revised §5(b) that, with only minor subsequent changes, was enacted as chapter 242 of the Acts of 1998.  These bills were assigned to the House Committee on Housing and Urban Development.  In the Committee's June 7, 1997 report on Bills 3855, 3455 and two others, only House Bill 3825 was reported as "Ought to Pass".   See Exhibit 2 (Docket 102 Exhibit 3 that contains a copy of the committee report from the State Archives.  For a further discussion of the legislative history, see pages 3 to 5 and 10 to 12 of Docket #100 and Exhibits 1

---

[6] The Text of House Bill 3825 was:  "Subsection (b) of section 5 of chapter 183A of the General Laws, as most recently amended by section 2 of chapter 365 of the acts of 1994, is hereby amended by inserting after the word "consent in line 2, the following: -- of seventy-five percent."

to 6 of Docket #102 all of which are contained in the attached Exhibit 3 for ease of reference.

What this unambiguous legislative record, for chapter 242 of the Acts of 1998 means is that the legislature's rejection of 75% consent must be incorporated in the interpretation of the revised §5(b).  The 100% consent provision applies to the Northwood phasing rights extension as the Bankruptcy Court ruled.

## By the doctrine of "inclusio unius est exclusio alterius"  the 100% consent of §5(b)(1) is not excluded by §5(b)(2)(iii)

A condominium association's power pursuant to §5(b)(2)(iii) specifically excludes the provisions of section §19 as follows:

> "(iii) Extend, revive or grant rights to develop the condominium, including the right to add additional units or land to the condominium; provided, however, that the rights to add additional units are set forth in or specifically authorized by the master deed, and, notwithstanding any provision in section 19 to the contrary, withdraw any portion of the common area of the condominium upon which, at the time of said withdrawal, no unit has been added to the condominium in accordance with the master deed"

If the legislature had intended to exclude also the 100% consent provision of §5(b)(1), then it would have done so.  Because the legislature explicitly excluded the provisions of §19, by the doctrine of "inclusio unius est exclusio alterius" it did not exclude the provisions of §5(b)(1). See *Livoli v Board of Appeals of Southborough* 42 Mass. App. Ct. 921 923(1997) invoking the doctrine for the interpretation of a zoning bylaw;  See also *In re Push & Pull Enterprises, Inc.* (Bkrtcy .N.D.Ind.,1988.) 84 B.R. 546 551, 18 Collier Bankr.Cas.2d 1156  citing *Ford v. United States*, 273 U.S. 593, 47 S.Ct 531, 71 L.Ed. 793 (1927) for the doctrine.

## The 1998 Legislature was precise in using "subsection" and "subparagraph" in the revised §5(b), and that precision must be given meaning

Much of the confusion surrounding subsection §5(b) is the result of the failure to interpret it using the precise terms the legislature used in the 1998 revision to describe its structure.   The

following table depicts the levels of subsection §5(b) and the precise terms used by the 1998 legislature in §5(b) to identify each of those levels.

| Level | Term | Statutory Authority for Term |
|---|---|---|
| 5 | Section | Sections 4 and 19 are referenced as such in 5(b)(2)(i) to (iii) |
| (a) to (g) | Subsections | Chapter 242 of the Acts of 1998 describes replacing subsection (b) and within the text of the new subsection (b) subsection §5(a) is referenced as such in subparagraph §5(b)(2)(iii). |
| (1) & (2) | Paragraphs | Paragraph §5(b)(2) is referenced as such in 5(b)(2)(iv). |
| (i) to (iv) | Subparagraphs | Subparagraph §5(b)(2) (iii) is referenced as such in 5(b)(2)(iii) & (iv) |

The 1998 legislature carefully drafted the new subsection §5(b) using precise language to refer to different levels of its structure.  When the term "this subsection" is used within subsection §5(b) it refers to all the parts of subsection §5(b), which include both paragraphs §5(b)(1) & §5(b)(2) and all their subparagraphs.  Subparagraph §5(b)(2)(iii) refers to itself using the words "Any action taken pursuant to this subparagraph" and ends with the certification requirement:  "reciting compliance with the requirements of <u>this subsection</u>".  This certification further reinforces the legislature's intent that the condominium association has a limited, conditional power to extend, revive, and grant phasing rights.  It is conditioned on meeting all the requirements of subsection §5(b) including the 100% consent of §5(b)(1).

<u>"Constructive Consent" makes the 100% Consent of §5(b)(1) apply to Phasing Rights Extensions</u>

By enacting the "constructive consent" provision the legislature made it much easier for some condominiums to meet the 100% consent requirement of §5(b)(1).  The "constructive consent" provision is as follows:

> "provided, however, that the acceptance and recording of the unit deed <u>shall constitute consent</u> by the grantee <u>to the addition of subsequent units or land or both to the condominium</u> and consent to the reduction of the undivided interest of the unit owner if the master deed at the time of the recording of the unit deed provided for the addition of units or land and made possible an accurate determination of the alteration of each unit's undivided interest that would result therefrom."  M.G.L. c. 183A §5(b)(1).

By its terms, underlined above, the "constructive consent" clause only applies to the addition of units or land to the condominium under certain conditions. This legislative expression of intention depends upon §5(b)(1) itself applying to the addition of units or land otherwise there would be no need for the "constructive consent" clause. Therefore §5(b)(1) must still apply to the addition of units or land to a condominium master deed contrary to Northwood's claim.

Northwood's claim that §5(b)(1) does not apply to the Northwood phasing rights extension is meritless because it makes §5(b)(1) a nullity. There is absolutely no statutory support for Northwood's claim that §5(b)(1) only applies when a developer tries to extend phasing rights. See Northwood's argument on page 5 lines 18-21 of the Hearing Transcript (Docket #19). Northwood has not offered any explanation, nor can they, of when the "constructive consent" provision would apply if, as they claim, it does not apply to the extension, revival, or grant of phasing rights by a condominium association. Therefore the 100% consent requirement and 'constructive consent" provision of §5(b)(1) clearly applies to the extension of phasing rights!

<u>Northwood Trustees Certification of the Recorded Phasing Rights Extension was Premature</u>

The certification required by §5(b)(2)(iii) is: "compliance with the requirements of <u>this subsection</u>", which was subsection §5(b). This certification is not justified unless the 100% consent requirement of paragraph §5(b)(1) was met either directly or by "constructive consent". This certification is required before the document is recorded.

In this case, the Northwood Trustees prematurely certified the phasing rights extension amendment to the master deed. Because the master deed did not provide constructive consent to the phasing rights extension, they were required to obtain 100% consent of the owners before

they certified their action on January 23, 2006.  The extension with their certification was

subsequently recorded on March 7, 2006 .  See page 4 of Appellee Exhibit 9.  The Trustee's

certification was premature because until Bourne and Delise consent, the required 100% consent

of §5(b)(1) has not been satisfied.


Appellants' Cases conveyed applicable settled Law because 100% consent has been required
since 1963.

With the 1998 revision  §5(b)(1)  requires 100% consent as §5(b) has since 1963 as previously

discussed as follows:

> "(b)(1) The percentage of the undivided interest of each unit owner in the
> common areas and facilities as expressed in the master deed shall not be altered
> without the consent of all unit owners whose percentage of the undivided interest
> is materially affected" §5(b)(1)

During the time period represented by the cases cited by Appellants there has been one constant:

100% consent was required.  Except where there is a specific exclusion in the statute of prior

interpretations in the case law, they remain applicable and relevant to the current law.  As

explained in a previous section of the argument, §5(b)(1) includes a clause that removes the

dedication of common land to exclusive use thereby nullifying the _Kaplan v. Boudreaux._

decision but not its logic.   The extension, revival, or grant of phasing rights was not removed.

This means that Northwood's desire to dispense with settled Massachusetts condominium law

cannot be justified.  The _Suprenant v. First Trade Union Sav. Bank, FSB_ 40 Mass.App.Ct. 637

(1996), _Viola v. Millbank II Associates_ 44 Mass.App.Ct. 82 (1997), _Strauss v. Oyster River_

_Condominium Trust_, 417 Mass. 442, 445-447, 631 N.E.2d 979 (1994), _Kaplan v. Boudreaux_ 410

Mass. 435, 573 N.E.2d 495 (1991) and other cases cited by Appellants all remain settled law that

will facilitate understanding of how §5(b) is to be interpreted as it applied to the Northwood

phasing rights extension.

<u>Northwood's Master Deed Contemplates Completion with 24 units</u>

The Northwood Master Deed clearly contemplates that all planned phases might not be completed.  In the first unnumbered paragraph on page 2 it says:  "When and if all phases are completed the condominium will contain sixty-six (66) units."  In other words, the developer contemplated completion with fewer than 66 units within the 7-year term of the phasing rights that they established in the Northwood master deed.   Consistent with the developer's intention, the Master Deed did not contemplate any extension of the phasing rights.  There simply is no discussion of this possibility.

When purchasing a condominium every owner thus would reasonably expect that no matter what happened, that as of December 9, 2005 all construction would be complete.  Northwood having drafted this contract has no moral or equitable right to any extension without the unanimous consent (100%) of the unit owners.

<u>Bourne and Delise deeded 3.92% interests became Fixed on December 9, 2005</u>

Northwood's argument that Bourne and Delise were granted an approximate interest is meritless.  See ¶ 2 page 20 of Northwood's Brief.  As their unit deeds clearly show, they were granted a 3.92% interest in the common areas and facilities.  See Bourne and Delise Unit Deeds Appellants Appendix Exhibit 13 & 14.  That percentage became fixed with the expiration of the developer's initial phasing rights on December 9, 2006.  See the last paragraph of <u>*Suprenant v.*</u> <u>*First Trade Savings Bank*</u> 40 Mass. App. Ct. 637 641; 666 N.E.2d 1026 1028-1029 as follows:

> "The reserved right to add additional   phases (and to amend the master deed accordingly, under §13C, without approval of any unit owner) was limited under § 13B(a) to a period of seven years after the recording of the master deed. There having been no phases added pursuant to §13 <u>by the time the reserved right expired (together with the plaintiff's</u> <u>concomitant agreement to reduction in her percentage interest), the plaintiff's percentage</u> <u>interest became fixed.</u> Any subsequent attempt by the bank to add phases affecting the unit owners' percentage interests required, under *G. L. c. 183A, §5*(b), one hundred

percent approval of all owners whose percentage interests were affected. See *Kaplan v. Boudreaux, 410 Mass. 435, 443-444, 573 N.E.2d 495 (1991); Strauss v. Oyster River Condominium Trust, 417 Mass. 442, 445-447, 631 N.E.2d 979 (1994)."*

## Phased Condominiums Often use a table of percentage interests or an explicit formula to provide "Constructive Consent"

In the Bankruptcy Court, the Appellants described numerous master deeds where there was a table of percentage interests or a formula by which future percentage interests could be determined.  These included the Herring Run Condominium Master Deed where in Exhibit E there is a table of final percentage interests and a formula to enable the calculation of the result of adding any unit in any order to the first phase of the condominium (Document No 15. of Docket #75) and the Cape Codder Condominium Master Deed where §14(iii)(a) describes a formula, multiply your current interest by .3141, to get the new percentage interest when phase 2 is added  (Document No. 19 of Docket #75).  In addition, the Appeals Court in *Viola* described the tables in the Millbrook Condominium Master Deed.  This is sufficient to establish the point that competent attorneys knew how to draft master deeds for phased condominiums.  In addition, the M.C.L.E. publication *Condominium Law* suggested using tables of percentage interests and the Land Court requires such tables in all master deeds on "registered land" as discussed in Appellants' Brief.

It was because all Cape Codder Condominium unit owners had given their constructive consent by §14(iii)(a) of the Cape Codder master deed described above, that the Appeals Court stated in *Hutner v. Cape Codder Condominium Bd. of Trustees* 52 Mass.App.Ct. 429, 754 N.E.2d 138 (2001) that 75% of unit owner consent was sufficient to extend the phasing rights. That portion of their opinion was "in dicta" as the constructive consent requirements of §5(b)(1) were clearly met in the master deed by a "rigid" formula.  Northwood's reliance on this case is misplaced and they knew it was misplaced, because appellants verified the fact that the Cape

- 14 -

Codder Master Deed had a "rigid" formula to the Bankruptcy Court and that fact has never been disputed.

<u>Discussion of Northwood's Strained Interpretation Of  "Constructive Consent"</u>

Northwood claims that the constructive consent provisions of §5(b)(1) only require that the master deed not prevent a subsequent determination of each unit owner percentage interest is meritless.  See page 22 of Appellee's Brief.  That statement alone proves they do not understand the constructive consent provision of §5(b)(1) which is:

> "provided, however, that the acceptance and recording of the unit deed shall constitute consent by the grantee to the addition of subsequent units or land or both to the condominium and consent to the reduction of the undivided interest of the unit owner <u>if the master deed at the time of the recording of the unit deed</u> provided for the addition of units or land and <u>made possible an accurate determination of the alteration of each unit's undivided interest that would result therefrom.</u>" M.G.L. c 183A §5(b)(1)

First by the clear words of the statute it is the master deed when Bourne and Delise recorded their units deeds that is the only relevant master deed in play.  Therefore,  subsequent master deeds that include additional data on future phases cannot be part of  "made possible an accurate determination".  Appellants challenged Northwood to show where in their master deed the information was hiding that would enable them to make an accurate determination of their interests in the form of x.xx% when any of the next three phases were added.  Northwood did not address this because they cannot!

<u>NORTHWOOD'S PROCEDURAL ARGUMENTS</u>

<u>All Parties have Been Served,  No party has been Prejudiced</u>

Appellants' have served counsel of both Tashmoo Cove Realty, Inc. and the Trustees of the Northwood at Sudbury Condominium Trust with all the documents that are relevant to this

appeal.  This included all those documents filed in the Bankruptcy Court regarding the appeal

and all those filed by Appellants' in the District Court.  See Certificates of Service for Appeals

Dockets #3, 4, 6, 8, 10, 11, & 12 all filed by the Appellants.  In addition Northwood also

included Tashmoo and the Condominium Trustees in their Certificates of Service for District

Court Docket #5, 7, & 9.  It was only with the filing of Appellee's Brief and Appendix that

Northwood failed to include Tashmoo and the Condominium Trustees.  To remedy their

obviously deliberate omission, on the same day (November 15, 2006) Bourne forwarded to

Tashmoo and the Condominium Trustees the Appellee's Brief and Appendix.  As a result, both

Tashmoo and the Condominium Trustees have been fully informed of these proceedings and

were not prejudiced by any alleged procedural failure by the Appellants in perfecting their

appeal.  See _Celulares Telefonica De P.R., Inc. v Advance Cellular Sys._ 262 BR 10 (2001, DC

Puerto Rico)   District Court applying Rule 8001(a) for violations of Rule 8006 should consider

whether appellant was negligent or acted in bad faith, what prejudice, if any, other interested

parties of bankruptcy proceeding as well as proceedings themselves incurred as result of

appellant's failure to perfect its appeal.   By Serving Tashmoo and the Condominium Trustees

with all the relevant documents including the Appellee's Brief and Appendix, Appellants have

demonstrated their good faith.  Northwood has not alleged or proved prejudice.  Northwood's

procedural argument is nothing more than diversionary and insufficient to prevent the District

Court from fully considering this appeal.


Appellants Adequately Developed the Statute of Frauds Argument in the Bankruptcy Court

        Northwood claims that Appellants' argument that Bourne and Delise's consent is also

required pursuant to the Statute of Frauds cannot be raised on appeal citing _B&T Masonry_

_Construction_ and alleging that this issues was not part of earlier proceedings in the Bankruptcy

Court.  Their claim is meritless.  In *B &.T Masonry Construction* the First Circuit characterized

the situation as follows:

> "B&T did not renew this specific theory in its appellate briefs n3 but, rather, relied upon a newly contrived theory. On appeal, it suggests for the first time that the exclusion clauses, taken in the ensemble, render the insurance policy illusory (and, accordingly, that the exclusions are unenforceable). We cannot countenance such a bald-faced switching of horses in mid-stream. Advancing one theory in the trial court and jettisoning it in favor of another (previously unarticulated) theory in the court of appeals is unacceptable."  *B & T Masonry Constr. Co. v. Pub. Serv. Mutual Insur. Co*., 382 F.3d 36, 39-40 (1st  Cir. 2004)

Unlike B& T, the Appellants were not switching arguments on appeal.  The Statute of Frauds

argument was sufficiently developed in the  Bankruptcy Court.  It can be found in Exhibit 4.

This presentation of the issue to the Bankruptcy Court was clearly sufficient to preserve

the Argument on appeal.  It was clearly argued that M.G.L. c. 259 §1 the Statute of Frauds

required the written consent of Bourne and Delise to the addition of units or phases to the master

deed.  Northwood's claim that the Statute of Frauds argument was new on appeal was clearly

false and another diversionary procedural argument to avoid the central issues of this case.


Appellants May Introduce New Citations On Appeal To Support Previously Raised Issues

Northwood also argues that Appellants cannot argue the newly discovered Land Court

decision *Lebowitz v. Heritage Heights, Inc.* 8 L.C.R. 295 (2000) in support of their prior

arguments over the correct interpretation.  Northwood's suggestion that *B & T Masonry*

*Construction* and *Teamsters Union*  stand for this proposition is clearly misplaced.  Had they

bothered to read these cases they would know that these cases have nothing to do with the use of

a new citation in support of a previous argument.  *B& T Masonry* was previously discussed. In

*Teamsters* the First Circuit said:

> "n5 In argument before us, the appellant suggested that, in order to find a winnable claim, the district court, unguided, should have looked to the plaintiffs'

> belated opposition to the defendants' Rule 56(c) motion, filed fourteen months earlier. We disagree. It would make no sense to require a busy trial court to excuse the lack of any allegation of meritoriousness and launch a search for usable needles in every haystack that dots the antecedent record, unassisted by the litigant who seeks to benefit from such a rummage. To the exact contrary, "courts are entitled to expect represented parties to incorporate all relevant arguments in the papers that directly address a pending motion." *McCoy v. Massachusetts Inst. of Technology, 950 F.2d 13, 22 n.7 (1st Cir. 1991)* [No. 91-1318, slip op. at 21 n.7]." <u>Teamsters Union v. Superline Transp. Co</u>., 953 F.2d 17, 21 (1st Cir. 1992)

Northwood's case citations do not support their claims.  Appellants were well within their right to cite <u>Lebowitz v. Heritage Heights</u> for the Land Court interpretation of the new 5(b)(1) in support of their previously made argument as to the proper interpretation of the statute. Northwood's claim that this was a new issue, first raised on appeal, was meritless.


CONCLUSION

<u>Northwood Phasing Right Extension Requires Bourne & Delise's consent</u>

Under established Massachusetts condominium law, now M.G.L c. 183A §5(b)(1), the reduction of percentage interests that occur when additional phases are added to a condominium master deed, has since 1963 required unanimous owner consent.  The Northwood master deed did not satisfy the "constructive consent" provision of §5(b)(1).  When Bourne and Delise accepted and recorded their unit deeds with their 3.92% interests in the common areas and facilities the Northwood master deed did not enable them to determine, before accepting their deed, what their interests would become when phases three, four and five were subsequently added to the master deed as required for there to have been "constructive consent".

Bourne and Delise are the only owners who have not yet given their consent to the Northwood  phasing rights extension.  If and when Bourne and Delise agree to consent to the phasing rights extension approved by the other owners it shall become a valid amendment to the

Northwood master deed.  Without their consent, Northwood Properties, LLC will be unable to add additional phases to the Northwood master deed.  The Decision of the Bankruptcy Court denying the Bourne Delise motion for a determination that the extension of the Northwood phasing rights requires their consent was based on incorrect interpretation of the applicable law and thus must be annulled.

<u>Northwood's Confirmation should be reversed</u>

The Northwood Plan modification impermissibly classified 4 of the 5 Class 1 claims in an attempt to engineer a favorable confirmation using the single vote that Northwood received for its reorganization plan.  Northwood's last minute creation of a convenience class for three (3) claims was transparently done to impermissibly gerrymander the claims and votes.  The Bankruptcy Court decision approving the Convenience Class was clearly erroneous and must be annulled.  Tyler's claim remains impaired.  The debtor does not have sufficient assets to pay his claim.  Tyler's claim should have remained in the same class as the Northwood at Sudbury Condominium Trust claim.  The decision that Tyler's claim was unimpaired was clearly erroneous and must be annulled.  These four claims should have been permitted to vote in the same class as the Northwood Condominium Trust.  The decision to deny their Rule 3018 motions because they were moot must be annulled.  Northwood's Reorganization Plan should not have been confirmed because, had the claims been properly classified and permitted to vote, Northwood did not have the votes necessary for confirmation.  In addition, Northwood's plan was not feasible.  As Northwood admits it is only feasible with a valid phasing rights extension. The Decision of the Bankruptcy Court to confirm Northwood's Plan must be annulled.

Respectfully Submitted by

The Appellants


Dated: November 21, 2006         */s/ Sidney Bourne*       
                                          Sidney Bourne, pro-se
                                          20 Northwood Drive, Unit 403
                                          Sudbury, Massachusetts 01776
                                          (978) 369-4851


                                          */s/ Claudio M. Delise*      
                                          Claudio M. Delise, pro-se
                                          20 Northwood Drive, Unit 301
                                          Sudbury, Massachusetts 01776
                                          (978) 369-7039


                                          */s/ Ralph S. Tyler*         
                                          Ralph S. Tyler, pro-se
                                          One Deacon Lane
                                          Sudbury, Massachusetts 01776
                                          (978) 443-2646


## CERTIFICATE OF SERVICE

On November 21, 2006, a copy of the Appellants' Final Reply Brief with exhibits and this Certificate of Service was filed with the District Court.   In addition they were also filed electronically as pdf files directly to the following at the e-mail addresses shown in < >:

1. Eric K. Bradford, Esq. US Trustees Office <Eric.K.Bradford@usdoj.gov>

2. Debtor Northwood Properties, LLC's bankruptcy counsel Alan Braunstein, <abraunstein@riemerlaw.com> , C. M. Condon <ccondon@riemerlaw.com> , Kristin McDonough    <kmcdonough@riemerlaw.com>, Robert Mann <lawmann1@aol.com> Jeffery Ganz <jganz@riemerlaw.com>

3. Trustees of the Northwood at Sudbury Condominium Trust's counsel John Aquino, Esq. <jja@andersonaquino.com> ; and

4. Tashmoo Cove Realty's counsel John Monaghan, Esq. < john.monaghan@hklaw.com >


                                          */s/ Claudio M. Delise*